IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Lorenzo Nesbitt,                              )
                                              )
          Petitioner,                         )      Case No. 8:11-920-RBH-JDA
                                              )
          v.                                  )      **REPORT AND RECOMMENDATION**
                                              )      **OF MAGISTRATE JUDGE**
State;[1] Warden McCormick Correctional       )
Institution,                                  )
                                              )
          Respondents.                        )
_____)

          This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 31.] Petitioner is a state prisoner who seeks relief pursuant to Title 28, United States

Code, Section 2254.  Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to

review post-trial petitions for relief and submit findings and recommendations to the District

Court.

          Petitioner filed his Petition for writ of habeas corpus on April 18, 2011.[2]  [Doc. 1.]

On September 30, 2011, Respondent filed a motion for summary judgment and a return

and memorandum.  [Docs. 31, 32.]  On October 3, 2011, the Court filed an Order pursuant

to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Petitioner to respond to the

---

[1] Because a prisoner's custodian is the proper respondent in a habeas corpus action, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), Respondent State was terminated as a party and Respondent Warden McCormick Correctional Institution was added as a party on April 27, 2011, as directed by the Court's Order authorizing service of process.  [Doc. 8.]  Accordingly, throughout this Report and Recommendation the Court refers to Respondent Warden McCormick Correctional Institution as "Respondent."

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on April 18, 2011.  [Doc. 1-2 (envelope postmarked April 18, 2011).]

motion and of the possible consequences if he failed to adequately respond. [Doc. 34.] Subsequently, Petitioner filed two responses in opposition to Respondent's motion for summary judgment. [Docs. 44, 46.] Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is currently incarcerated in the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Charleston County. [Doc. 1 at 1.] Petitioner was indicted on December 6, 2004 for failure to stop for a blue light ("FTSBL") and on February 14, 2005 for burglary in the first degree and criminal sexual conduct ("CSC") in the first degree. [App. 255–60.] He was initially represented by Rodney Davis [App. 113, 128–32], and he was represented at trial and his guilty plea by Beatty Butler and Steve Harris [App. 1]. On December 12, 2005, Petitioner pled guilty to the offenses.[3] [App. 66–93.] On December 15, 2005, Petitioner was sentenced to thirty years for CSC in the first degree, three years for FTSBL, and thirty-seven years for burglary in the first degree, all sentences to run concurrently. [App. 105.] Petitioner did not file a direct appeal.

### PCR Proceedings

Petitioner filed a pro se application for post-conviction relief ("PCR") on March 27, 2006 [App. 109–14], alleging as his grounds for relief (1) ineffective assistance of counsel, (2) involuntary guilty plea, (3) conflict of interest, (4) too harsh sentencing, (5) constitutional

---

[3] Petitioner pled guilty after jury selection had been conducted and pretrial motions had been made in his criminal trial. [*See* App. 1–66.]

violations, and (6) imposition of sentence [App. 111]. Petitioner did not include any supporting facts in the application, stating "Allegations will be amended upon appointment of counsel." [*Id.*] The State made a return to Petitioner's PCR application on May 11, 2006. [App. 117–23.]

An evidentiary hearing was held on September 10, 2008, at which Petitioner was represented by H. Stanley Feldman. [App. 125–243.] At the evidentiary hearing, the PCR court heard testimony from Petitioner; Petitioner's mother; Rodney Davis, who represented Petitioner up to the time of trial; and plea counsel Butler. [*Id.*] On October 14, 2008, the PCR court denied and dismissed Petitioner's PCR application.[4] [App. 247–54.]

On June 17, 2009, LaNelle Cantey DuRant filed a *Johnson* petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court. [Doc. 32-4 at 1–9]. The *Johnson* petition raised the following issue:

> Did the PCR court err in failing to find trial counsel ineffective for not adequately preparing for trial by failing to ask for a continuance and failing to communicate with petitioner which made his guilty plea involuntary and not knowingly entered into?

[*Id.* at 3.] Petitioner did not file a pro se petition. Certiorari was denied on February 10, 2011 [Doc. 32-5], and remittitur was issued on February 28, 2011 [Doc. 32-6].

**Petition for Writ of Habeas Corpus**

This Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed on April 18, 2011. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim:

---

[4] The Order of dismissal was filed on October 20, 2008. [App. 247.]

3

Ground One:  Ineffective Assistance of Counsel . . . Counsel was not prepared.

Supporting Facts:  . . . The PCR court erred in failing to find trial counsel ineffective for not adequately preparing for trial by failing to ask for a continuance and failing to communicate with petitioner which made his guilty plea involuntary and not knowingly entered into[.]

A[t] the guilty plea, when Judge Manning asked [me] if I had enough time to make up my mind as to whether or not I wanted to plead guilty, I responded: "Not really."  Judge Manning then asked if I needed more time and I told Judge Manning I needed about a week.  Judge Manning then told me that I didn't have a week.  Judge Manning told me that I had 10 to 15 minutes to decide what I'm going to do.  I later told the Judge I would proceed because Counsel never made an attempt to ask the Judge for a continuance.  My attorney(s) were ineffective for not communicating with me concerning the substitution of counsel.  Counsel should have asked for a continuance in order to talk to me and insure that I understood all of the issues from my new attorney's perspective.  My new attorney Butler never spen[t] any time in preparing my case for trial and later resulted me into taking a plea that I felt coerced into accepting, therefore resulting in prejudice both by the Judge Manning as well as my newly appointed counsel.  Mr. Butler was not prepared.  My PCR attorney told the court that the basis of my PCR application was ineffective assistance of counsel due to lack of preparation.  This was all covered under the umbrella of the Sixth Amendment right to effective counsel.

I did not know that Attorney Butler was my attorney until he visited me the Friday before the trial started the following Monday.  Ms. Nesbitt, [my mother], testified at the PCR hearing that her son wasn't pleading guilty because he did not do the crime.

I testified at the PCR hearing indicating I had not wanted to plead guilty and would not have pled guilty b[u]t for [my] attorney.  I would have insisted on going to trial.

I was entitled to effective representation at trial and on appeal.  Frasier v. State, Strickland v. Washington.  Counsel also failed to render reasonably effective assistance under prevailing professional norms, and the deficient performance prejudiced my case.  Gallman v. State.  Also counsel fail[ing] to investigate possible defenses constitutes ineffecitve assistance of counsel, Cobb v. State.  My PCR attorney asked Mr. Butler about the continuance order to hire a DNA expert Dr. Ostrowski and Lounds v. State retained him for reviewing and testifying in this case.  Order of continunace was (11/18/2005) granted Judge Dennis.  Still counsel never got a report back

from DNA expert. Neither did counsel acknowledge[] to me that Dr. Ostrowski file[d] any paper work or talk to him prior to us going to trial, neither if he would be a potential witness as to testifying about the DNA evidence.

<u>Ground Two</u>: Conflict of Interest . . .

<u>Supporting Facts</u>: In that Rodney Davis, Esquire, was relieved as counsel and Beattie Butler, Esquire, was substituted as counsel despite working at the Charleston County Public Defender['] Office with Mr. Davis.

I alleged that the conflict of interest occur[r]ed when counsel fail[ed] to inform me (Mr. Rodney Davis) of a substitution of counsel, and newly appointed counsel came to speak with me at the county jail Friday following trial to beg[i]n on Monday. Newly appointed counsel wasn't fully aware of my case or of the continuance to consult a DNA expert, etc[.], nor have newly appointed counsel came and visit me numerous times to prepare for trial. <u>Hill v. Lockhart</u> Mr. Butler was Rodney Davis['] supervisor at the public Defender['] Office and positioned Davis to work the case, when Davis alleged to seek relief on terms of substitution of counsel by Judge Dennis, the ordered been denied so therefore at the time of trial he had still been my assign[ed] lawyer but he later let Mr. Butler take over the case as well as Attorney Mr. Harris whom I met in the court room and who stated to me that he was just there in the courtroom, but never went over nothing pertaining to my case.

<u>Ground Three</u>: Involuntary Guilty Plea . . .

<u>Supporting Facts</u>: I felt pressured into making a plea of guilty when the Judge asked me during the sentencing phase if I had enough time to decide if I wanted to make a plea, and I told the Honorable Judge Casey Manning I wasn't prepared for a plea. I wanted and was prepared to go to trail, but with [the] absen[ce] of my form[er] attorney Davis which resulted in substitution of counsel, I wasn't prepared by new counsel judgement.

I felt my plea was involuntary under Boykin v. Alabama because I was coerced into making a plea. I didn't want[] to accept and counsel should have asked for a continuance to consult with me and to make sure I fully underst[oo]d all of the issues from my new attorney['s] perspective but I never got that chance, neither the court gave me time to decide whether or not I needed more time to make a decision whether I would pursue going to trial instead of accepting a[n] involuntary plea. I ask that the court review the PCR Transcripts pg 235 21–25, pg 236 1–81.

[*Id.*; Doc. 1-1.]  As previously stated, Respondent filed a motion for summary judgment on September 30, 2011 [Doc. 31], which is now ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se petition is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

6

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

9

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

        (A) the applicant has exhausted the remedies available in the courts of the State; or

        (B)    (i) there is an absence of available State corrective process; or

            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

    (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

    (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.

State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a

"fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

## DISCUSSION

### Procedurally Defaulted Ground

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). It is a petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court

need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).

Here, Respondent argues Petitioner's grounds for relief are procedurally defaulted because they were not presented to the South Carolina Supreme Court through Petitioner's petition for writ of certiorari following the denial of his PCR application.[6]  [Doc. 32 at 12, 37.]  For the reasons explained below, the Court agrees Ground Two is procedurally defaulted.[7]

In his second ground for relief, Petitioner argues there was a conflict of interest between his original attorney, Davis, and his trial attorney, Butler, because Butler was Davis' supervisor at the Charleston County Public Defender's Office.  Petitioner's petition for writ of certiorari failed to raise a claim of conflict of interest; the petition presented the following issue:

> Did the PCR court err in failing to find trial counsel ineffective for not adequately preparing for trial by failing to ask for a continuance and failing to communicate with petitioner which made his guilty plea involuntary and not knowingly entered into?

[Doc. 32-4 at 3.]  The argument portion of the *Johnson* petition failed to address any claim related to conflict of interest [*see id.* at 5–9], and Petitioner failed to file a pro se petition. Therefore, this issue was not fairly presented to the Supreme Court of South Carolina and is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the

---

[6] Respondent acknowledges Petitioner has technically exhausted his available state court remedies. [Doc. 32 at 8.]  Respondent also does not assert that Ground One is procedurally defaulted to the extent Petitioner states a ground for relief based on ineffective assistance of counsel for counsel's failure to seek a continuance to adequately prepare for trial.  [*Id.* at 12 n.4.]

[7] The Court disagrees that Grounds One and Three are procedurally defaulted because these issues were presented through the Johnson petition for writ of certiorari to the South Carolina Supreme Court.  [Doc. 32-4.]

state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. In this case, Petitioner has failed to articulate cause for procedurally defaulting on his conflict of interest ground for habeas relief. Petitioner filed a petition for writ of certiorari in which this issue could have been raised; however, this issue was not raised in Petitioner's petition for writ of certiorari to the South Carolina Supreme Court, even though other issues were properly raised.[8] Petitioner cannot establish cause and actual prejudice because he abandoned the opportunity to preserve these specific issues; therefore, the Court recommends granting Respondent's motion for summary judgment as to Ground Two.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable

---

[8] As noted above, Petitioner included a conflict of interest claim in his PCR application. [App. 111; *see also* App. 252–53 (PCR court's decision as to conflict of interest claim).]

application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Williams*, 529 U.S. at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### *Ground One*

In his first ground for relief, Petitioner argues he received ineffective assistance of counsel because his counsel was unprepared. The Court concludes Petitioner is not entitled to habeas corpus relief based on the allegations raised in Ground One.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[9] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or

---

[9] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court evaluated Petitioner's counsel's performance under the standard set forth in *Strickland*.  [App. 250–52.]  The PCR court made the following findings:

> This Court finds that [Petitioner's] testimony was not credible, while also finding that counsel's testimony was credible.  This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses.  This Court finds that counsel was well prepared.  Counsel conferred with [Petitioner] on numerous occasions.  During conferences with [Petitioner], counsel discussed the pending charges, the elements of the charges and what the State was required to prove, possible punishments, [Petitioner's] constitutional rights, [Petitioner's] version of the facts, and possible defenses or lack thereof. . . . [A]t the plea hearing, . . . [Petitioner] told the court he was satisfied with his attorney. . . .

[App. 251–52.]  The PCR court found counsel "demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina."  [App. 252 (citations omitted).]  The court also found "counsel adequately conferred with [Petitioner], conducted a proper investigation, and was thoroughly competent in his representation."  [*Id.*]  The PCR court concluded Petitioner's counsel's performance did not fall below an objective standard of reasonableness and that Petitioner had failed to meet his burden of proof with respect to his ineffective assistance of counsel claim.  [*Id.*]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is

the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, Butler testified at the PCR hearing that the main evidence in Petitioner's criminal case was DNA evidence, and Butler consulted with a DNA expert in anticipation of trial. [App. 142.] Butler also testified there were two issues with the search warrant used to obtain Petitioner's DNA sample, which Butler raised in a motion to suppress to the trial judge after jury selection, but the judge denied the motion. [App. 146–50.] Butler testified he challenged the search warrant through a pre-trial motion, rather than raise it in a brief, to get fresh testimony from the person who obtained the search warrant. [App. 150–51.] Further, Butler testified he had twelve years' experience practicing criminal law; trial and law-related experience with burglary in the first degree and CSC; discussed with Petitioner, prior to the plea, the elements of the charges and what the State was required to prove; discussed Petitioner's version of the facts; and discussed possible defenses. [App. 158–59.] Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground One.

### Ground Three

20

In his third ground for relief, Petitioner argues his guilty plea was involuntary because he felt pressured into pleading guilty after his new attorney failed to seek a continuance to discuss the case with Petitioner and the trial judge failed to give Petitioner a week to decide if he wanted to plead guilty. The Court concludes Petitioner is not entitled to habeas corpus relief based on the allegations raised in Ground Three.

A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant," *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), and may be invalid if it was induced by threats or misrepresentations, *Brady v. United States*, 397 U.S. 742, 755 (1970) (holding that a defendant's guilty plea must be voluntary to be valid). However, a defendant's statements at the guilty plea hearing are presumed to be true. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Unsupported allegations on appeal or in a collateral proceeding are insufficient to overcome representations made during the guilty plea hearing. *Via v. Superintendent, Powhatan Corr. Ctr.*, 643 F.2d 167, 171 (4th Cir. 1981).

The PCR court made the following findings as to Petitioner's guilty plea:

> . . . The record reflects that [Petitioner] admitted guilt at the plea hearing . . . . [Petitioner] also told the plea court that no one threatened him or promised him anything to get him to plead guilty. [Petitioner] told the court that he understood his right to appeal within ten (10) days. This Court finds that it was [Petitioner's] decision alone to plead guilty. This Court also finds that the plea was entered voluntarily and intelligently.

[App. 251–52.] Upon review, the Court finds the PCR court's finding that Petitioner's guilty plea was freely and voluntarily entered is supported by the record. Petitioner affirmed (1) he understood what he was doing when he entered his plea; (2) Butler explained to him the charges, the possible punishments, and his rights, including the right to a jury trial, and he

understood these things; (3) he understood the maximum penalties and when he could be paroled; (4) he understood his sentences could run consecutively; (5) he understood what rights he was giving up by pleading guilty. [App. 70–79.] Petitioner acknowledged he understood that by pleading guilty, he was admitting the truth of the allegations contained in the indictments against him. [App. 79–80.] Petitioner further acknowledged no one had promised him anything or held out any hope of a reward for a guilty plea and that no one had threatened, forced, pressured, or intimidated him to get him to plead guilty. [App. 83.]

Petitioner indicated he had not had enough time to make up his mind as to whether to plead guilty and needed another week to make up his mind. [*Id.*] The trial judge said he would allow Petitioner to speak with his attorney for "about ten or fifteen minutes," but Petitioner had to decide to proceed with the plea or proceed with the trial.[10] [App. 83–84.] Petitioner stated he would continue with the plea and did not need more time with his attorney. [App. 84.] The trial judge accepted the plea and deferred sentencing for a few days for the parties to gather and prepare statements to present at sentencing. [App. 89; *see also* App. 66.]

Although Butler had been recently appointed to represent Petitioner and the trial judge would not allow Petitioner a week to decide whether to plead guilty, Petitioner's responses throughout the plea colloquy indicate he understood what he was doing by pleading guilty, he had sufficiently consulted with his attorney, and he was freely and voluntarily entering a guilty plea. Thus, the Court concludes the PCR court's decision with respect to Petitioner's involuntary guilty plea claim was not contrary to or an unreasonable

---

[10] Petitioner's trial was under way at the time he decided to enter a guilty plea. *See supra* note 3.

application of federal law, as determined by the United States Supreme Court, or based on an unreasonable determination of the facts before the PCR court, and therefore, Petitioner is not entitled to habeas corpus relief on the basis of Ground Three.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 16, 2012
Greenville, South Carolina